IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CYBOENERGY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. WA-22-CV-1136-KC |
| | § | |
| ALTENERGY POWER SYSTEM | § | |
| USA, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day, the Court considered Defendant Altenergy Power System USA, Inc.'s Motion to Dismiss (the "Motion"), ECF No. 9. For the following reasons, the Motion is **GRANTED**.

## I.     BACKGROUND

This case involves Plaintiff CyboEnergy, Inc.'s allegations that Defendant directly and indirectly infringed two of its patents related to solar power inverter technology. Compl. ¶¶ 6–19, ECF No. 1. In this Motion, Defendant seeks dismissal of only the direct infringement claims, pertaining to only one of the two patents: "Smart and Scalable Power Inverters," U.S. Patent No. 8,786,133 (filed July 15, 2010) (the "'133 Patent"). Mot. 3.

Plaintiff alleges that Defendant directly infringed "one or more" of the '133 Patent's twenty-four claims. Compl. ¶ 8. But Plaintiff provides concrete factual allegations pertaining to only two of those claims: Claims 15 and 19. *Id.* ¶ 9 ("Support for the allegations of infringement may be found in the . . . chart attached as Exhibit A."); Compl. Ex. A ("Claim Chart") 1–7, ECF No. 1-1.

Claim 15 reads:

A scalable DC to AC power inversion system for providing AC power to a power grid from a plurality of individual DC power sources each having a DC power output port, comprising:

      a)      a plurality of power inverters, each of said power inverters including a single DC-AC inverter, at least two DC power input ports coupled to the single DC-AC inverter, an AC power input port, and an AC power output port coupled to the single DC-AC inverter, each of said DC power input ports having one DC power source connected thereto;

      b)      said AC power output port of each power inverter being connected in a daisy chain to the AC power input port of the next power inverter, except for the AC power input port of the first power inverter being left open, and the AC power output port of the last power inverter being connected to a power service panel of the power grid;

      c)      whereby said system is incrementally scalable by adding or subtracting DC power sources and daisy-chained inverters.

Claim Chart 1–4; Compl. Ex. C ("'133 Patent"), at 25, ECF No. 1-3.

For its part, Claim 19 reads:

A method of making a DC to AC power conversion system incrementally scalable, comprising:

      a)      providing a plurality of DC power sources and a plurality of DC to AC power inverters, said DC to AC power inverters each having a single DC-AC inverter, an AC input port coupled to the single DC-AC inverter, an AC output port coupled to the single DC-AC inverter, and at least two DC input ports coupled to the single DC-AC inverter;

      b)      connecting at least one of said DC power sources, respectively, to each of said DC input ports; and

      c)      providing AC power to the power grid.

Claim Chart 5–7; '133 Patent, at 25.

Plaintiff claims that at least four of Defendant's products, the YC-500, YC-600, YC-1000, and QS1 (the "Accused Inverters"), each of which is a single inverter, infringe Claims 15 and 19. Claim Chart 1–7. Plaintiff alleges that Defendant sells the Accused Inverters with a User Manual, which provides operating instructions that teach how to connect multiple inverters together and with other equipment into a system, which infringes Claims 15 and 19. *See id.* at 1–

7.  Plaintiff does not allege that Defendant manufactures or sells any multi-inverter systems, any

power sources, nor any equipment other than the Accused Inverters.  *See generally id.*

Defendant filed this Motion on March 3, 2023.  Plaintiff filed a Response, ECF No. 13, to

which Defendant filed a Reply, ECF No. 14.

## II.    DISCUSSION

### A.    Standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it

fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In ruling on a

Rule 12(b)(6) motion, "the court must accept all well-pleaded facts as true and view them in the

light most favorable to the plaintiff."  *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002);

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).[1]  Though a complaint

need not contain "detailed" factual allegations, a plaintiff's complaint must allege sufficient facts

"to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[1] Generally, "Federal Circuit law applies to causes of action within the exclusive jurisdiction of the
Federal Circuit," which includes patent infringement claims.  *Golan v. Pingel Enter., Inc.*, 310 F.3d 1360,
1368 (Fed. Cir. 2002) (collecting cases).  But even in cases within the Federal Circuit's purview, the law
of the regional circuit in which the district court presides applies to "purely procedural question[s],"
including the Rule 12(b)(6) pleading standards.  *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56
(Fed. Cir. 2007).  Accordingly, the Court looks to Federal Circuit precedent for the underlying substantive
law, but it does so within the architecture of the Rule 12(b)(6) standards established by the Fifth Circuit.
*See id.*

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *Colony Ins. Co.*, 647 F.3d at 252.  Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).  Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

**B.      Analysis**

Defendant argues that Plaintiff fails to state a claim for direct infringement of Claim 15 because it has not alleged that any of the Accused Inverters meet all of Claim 15's limitations. Mot. 5.  Defendant further argues that Plaintiff fails to state a claim for direct infringement of Claim 19 because it has not alleged that Defendant itself actually performed all of the steps of the method described in Claim 19.  *Id.* at 7–8.

**1.      Plaintiff does not state a claim for direct infringement of the '133 Patent.**

"Direct patent infringement occurs when 'whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor.'"  *CTD Networks, LLC v. Amazon.com, Inc.*, No. W-22-CV-1034-XR, 2023 WL 5281943, at *5 (W.D. Tex. Aug. 16, 2023) (alteration in original) (quoting 35 U.S.C. § 271(a)). "To state a viable direct infringement claim, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims."  *Encoditech, LLC v. Citizen Watch Co. of Am.*, No. SA-18-CV-1335-XR, 2019 WL 2601347, at *3 (W.D. Tex.

June 25, 2019) (citing *Encoditech, LLC v. Qardio, Inc.*, C.A. No. 18-864, 2019 WL 2526725, at

*3 (D. Del. June 19, 2019)).  Every claim limitation—not just some of them—must be met

because a patent is "the conferral of rights in a particular claimed set of elements. . . . and a

patentee's rights extend only to the claimed combination of elements, and no further."  *Limelight*

*Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014).

       "An accused device that does not literally infringe a claim may still infringe under the

doctrine of equivalents if each limitation of the claim is met in the accused device either literally

or equivalently."  *Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, 367 F. Supp. 3d 487, 514

(D.S.C. 2019) (quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1459 (Fed. Cir. 1998)

(en banc), *abrogated on other grounds by Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335

(Fed. Cir. 2015)).  "An element in the accused product is equivalent to a claim limitation if the

differences between the two are insubstantial to one of ordinary skill in the art."  *Id.* (quoting

*Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1382 (Fed. Cir. 2009)) (internal

quotation marks omitted).  "Insubstantiality may be determined by whether the accused device

performs substantially the same function in substantially the same way to obtain the same result

as the claim limitation."  *Id.* (quoting *Amgen*, 580 F.3d at 1382).

          **a.**      **Plaintiff does not state a claim for direct infringement of Claim**
                  **15.**

       Defendant argues that Plaintiff has not plausibly pled that any of the Accused Inverters

meets each limitation of Claim 15.  Mot. 5–7.  Claim 15 describes "[a] scalable DC to AC power

inversion system."  '133 Patent, at 25.  And system claims confer patent rights only to "the

system as a whole."  *See Centillion Data Sys., LLC v. Qwest Commc'ns Int'l*, 631 F.3d 1279,

1284 (Fed. Cir. 2011).  Thus, infringement of a system claim "requires a *complete* infringing

system: 'one may not be held liable under § 271(a) for "making" or "selling" less than a complete invention.'" *CTD Networks*, 2023 WL 5281943, at \*5 (quoting *Synchronoss Techs. v. Dropbox, Inc.*, 987 F.3d 1358, 1368 (Fed Cir. 2021)).

One of the limitations in Claim 15 provides that the system comprises "a plurality of power inverters, each of said power inverters including . . . [inter alia] at least two DC power input ports coupled to [a] single DC-AC inverter . . . each of said DC power input ports having one DC power source connected thereto." '133 Patent, at 25.  Another limitation of Claim 15 requires that the power inverters be "connected in a daisy chain." *Id.*  But Plaintiff does not allege that Defendant makes, uses, offers to sell, or sells any product that consists of more than one inverter daisy-chained together. *See generally* Compl.; Claim Chart.  Nor does Plaintiff allege that Defendant makes, uses, offers to sell, or sells any "DC power source," let alone such a power source connected to a plurality of power inverters. *See generally* Compl.; Claim Chart.  Each of the Accused Inverters is but a single inverter.  Claim Chart 1–2, 5.  Indeed, Plaintiff appears to concede as much, alleging not that Defendant makes or sells an infringing system, but that "[a] DC to AC power inversion system *enabled by* [Defendant's] inverters has a plurality of power inverters," Claim Chart 2, and that Defendant's user manual "show[s] how to connect multiple [Accused Inverters] together in a daisy chain with AC wires and connectors," Claim Chart 4.

Plaintiff acknowledges that "[d]irect infringement requires that a single defendant make, use, or sell all portions of the system." Resp. 5 (citing *Centillion*, 631 F.3d at 1288).  And Plaintiff does not dispute that Claim 15 describes a system comprising multiple inverters connected to one another and a DC power source.  Nor does Plaintiff offer any cogent argument for how the Accused Inverters could constitute a literally infringing multi-inverter system or its

6

equivalent, when they are but one discrete part of that system. *See generally id.* Instead,

Plaintiff relies on Defendant's User Manual, which instructs Defendant's customers to use the

Accused Inverters, together with other components that are not alleged to be made or sold by

Defendant, to assemble a multi-inverter system that infringes each element of Claim 15. Resp.

5–7; Claim Chart 3–4. But Defendant "is not vicariously liable for the actions of its customers"

under a theory of direct infringement.[2] *See Centillion*, 631 F.3d at 1287. Because there are no

allegations that Defendant actually makes, sells, offers to sell, or uses any product that contains

all components—or their equivalents—of the system described by Claim 15, Plaintiff fails to

state a claim for direct infringement.[3] *See CTD Networks*, 2023 WL 5281943, at *5.

### b.      Plaintiff does not state a claim for direct infringement of Claim 19.

Defendant next argues that Plaintiff has not plausibly alleged that Defendant itself

actually performed all of the steps of the method described in Claim 19. Mot. 7–8. Whereas

Claim 15 is a system claim, Claim 19 is a method claim, describing "[a] method of making a DC

---

[2] Unlike § 271(a) direct infringement, liability for inducing infringement under § 271(b) may exist when a party that does not make an infringing product nevertheless provides "instructions teach[ing] an infringing use" that are sufficient to support an inference of "an affirmative intent to infringe the patent." *HZNP Meds. LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680, 701 (Fed. Cir. 2019) (quoting *Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015)); *see also Nat'l Instruments Corp. v. MathWorks, Inc.*, 113 F. App'x 895, 898 (Fed. Cir. 2004). Plaintiff has also brought a claim under the theory that Defendant induces its customers to infringe the '133 Patent. Compl. ¶ 10. The Court expresses no opinion on the merits of Plaintiff's § 271(b) induced infringement claims, of which Defendant has not sought dismissal. *See generally* Mot.; Reply.

[3] Plaintiff also urges the Court to "reject [Defendant's] attempt to convert its motion to dismiss into an exercise in claim construction." Resp. 2. But Plaintiff does not offer any explanation of how the terms in Claim 15 could be construed so as not to describe a system with more than one power inverter and a DC power source. *See generally* Resp. Moreover, in the Parties' Joint Claim Construction and Prehearing Statement, ECF No. 32, Plaintiff agreed that "[a]ll terms [in the '133 Patent] should be given their plain and ordinary meaning," *id.* at 1. Because the Court finds that Plaintiff has not plausibly alleged that any of the Accused Inverters meets each limitation of Claim 15, it is unnecessary to conduct claim construction prior to dismissal. *See, e.g.*, *CTD Networks, LLC*, 2023 WL 5281943, at *7.

to AC power conversion system incrementally scalable." '133 Patent, at 25.  Just as direct

infringement of a system claim requires the infringer to use, make, or sell all components of the

claimed system, "[t]o infringe a method claim, a person must have practiced all steps of the

claimed method."  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1206 (Fed. Cir. 2010)

(quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009)).  "The sale

or manufacture of equipment to perform a claimed method is not direct infringement within the

meaning of 35 U.S.C. § 271(a)."  *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313

(Fed. Cir. 2003).  Not even when that equipment contains "instructions to perform a patented

method."  *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1221 (Fed. Cir. 2014) (quoting

*Ricoh Co. v. Quanta Comp. Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008)).  "[T]he direct infringer

must *actually* perform the steps in the method claim."  *Id.* (collecting cases).

One step of the method described by Claim 19 is "providing a plurality of DC power

sources."  '133 Patent, at 25.  Another is "providing AC power to the power grid."  *Id.*  Nowhere

does Plaintiff allege that Defendant makes, uses, or provides any DC power sources; nor that

Defendant provides power to any power grid.  *See generally* Compl.; Claim Chart 5–7.  Plaintiff

alleges only that Defendant's Accused Inverters "enable[]" a system that provides a plurality of

DC power sources.  Claim Chart 6.  And that the operating instructions in Defendant's User

Manual "teach how to operate the [Accused Inverters], which imply that the DC to AC power

conversion system enabled by [the Accused Inverters] provides AC power to the power grid."

*Id.* at 7.  Plaintiff thus alleges that Defendant provides equipment and "instructions to perform a

patented method."  *See Ericcson*, 773 F.3d at 1221.  But this does not suffice to state a claim for

direct infringement of a method claim, such as Claim 19.  *See id.*  Because Plaintiff nowhere

alleges that Defendant actually performed all steps of the Claim 19 method, Plaintiff has failed to state a claim for direct infringement of Claim 19.[4]  *See id.*

In sum, Plaintiff has failed to state a claim for direct infringement of any of the claims in the '133 Patent.  Accordingly, Defendant's motion is granted.

### 2.      Leave to Amend

Plaintiff requests leave to file an amended complaint.  Resp. 7.  Courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But courts may properly deny leave to amend "for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility."  *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014) (citing *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270–71 (5th Cir. 2010)).[5]  Amendment is futile when "the amended complaint would fail to state a claim upon which relief could be granted."  *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (collecting cases).

In the patent context, "[d]ismissal with prejudice is appropriate when a claim element 'cannot plausibly be construed to include or be the equivalent of'" the accused product.  *CTD Networks*, 2023 WL 5281943, at *6 (quoting *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018)).  It is apparent, for the reasons discussed above, that the Accused Inverters neither comprise the complete system described in Claim 15, nor practice each step of the method described in Claim 19.  And Plaintiff's barebones request for leave to amend does not

---

[4] As with Claim 15, the Court concludes only that Plaintiff has not stated a claim for direct infringement of Claim 19 and expresses no opinion as to whether Plaintiff has stated a claim for inducing infringement.

[5] A request for leave to amend a complaint is "a procedural issue" to which the Court applies Fifth Circuit law.  *See Microthin.com, Inc. v. SiliconeZone USA, LLC*, 377 F. App'x 8, 13 (Fed. Cir. 2010).

explain how its allegations could be amended so as to warrant a different conclusion. *See* Resp. 7.

Plaintiff has not argued, for instance, that the Accused Inverters infringe some other claim or claims in the '133 Patent, such that it should be granted leave to amend its allegations to describe infringement of those other claims. *See id.* And even if it had, Defendant argues that such a position would be unavailing. Defendant states that the '133 Patent's twenty-four claims comprise eighteen system claims and six method claims. Mot. 3–4. And that each of the other system claims contains limitations substantively identical to the limitations in Claim 15, *id.* at 7, and each of the other method claims explicitly references and depends on Claim 19 and its limitations, *id.* at 9. Plaintiff offers no response to these contentions. *See generally* Resp.

Accordingly, Plaintiff's request for leave to amend is denied, and Plaintiff's claims for direct infringement of the '133 Patent are dismissed with prejudice. *See CTD Networks*, 2023 WL 5281943, at *8 (denying the patent plaintiff's request for leave to amend where its "bare request . . . [did] not offer any explanation as to how its amendment would cure any deficiencies in its pleading").

## III.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 9, is **GRANTED**. Plaintiff's claim for direct infringement of the '133 Patent is **DISMISSED WITH PREJUDICE.** Plaintiff's other claims—including its claims for inducing infringement of the '133 Patent and its claims pertaining to U.S. Patent No. 9,331,489—remain pending.

**SO ORDERED**.

SIGNED this 13th day of September, 2023.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE